The United States Court of Appeals for the United States of America is now in the court of juror office. The United States is now in the court. Thank you. Thank you. Good morning. Good morning, everyone. I want to restate what I wrote in my brief on this issue, but I would like to also talk about the other issue, because there is a lot of case law, and I cited it, which says to meet the severe and pervasive standard is a very high standard to meet. And that also acknowledges that in the school context, that some type of sexual interaction among students and sexual connotations and sexual talk is to be tolerated. I mean, I've cited it. Well, I think that if you compare it with other case law, I know there is one case, I think I cited Doe v. Hill, which is a district court case within the 11th circuit. Right. But in that case, there was a threat of a sexual assault, which just turned into a regular assault. There was just two weeks of harassment, and we deem that that satisfied severe and pervasive element. Well, in the Hill case, I mean, the student was raped in the bathroom. In that case, we also said we do have to consider the constellation of surrounding circumstances, right? So we consider those circumstances in this case, and again, given the procedural posture, drawing emphases in favor of the plaintiff, how is that sufficiently severe, what's been alleged? Well, number one, you know, what we have here is one instance of nipple twisting, one instance of grabbing somebody by the arm to look at their genitals. A threat, a threat of a sexual assault, which wasn't, didn't actually turn into a sexual assault. It just turned into a regular assault. Correct. While they attempted the sexual assault. Well, it doesn't, I mean, you hear that, I mean, that's what tied in. Looking at someone's, like trying to attempt to look at someone's genitals, how is that not like a sexual attack? I mean, it just. I mean, it's a, I would say, of course you have to look at the context, and I know in cases like, and I believe, I believe it's uncalled case where they talk about. This is like a locker room where, like, you know, you undress and people are, I mean, this is not like I'm trying to look at your genitals and you're in the courtroom. I mean, and you're wearing clothes. I mean, this is a locker room situation where people undress. Right. And that, stuff like that, I would say is type of course play that goes on in locker rooms. The kind of things that are described is that may not, you know, in the adult world would be tolerated, but that there's got to be higher tolerance. Yeah. Well, I mean, I think that the, we have to take, the real question is, did it cross the line? And could a jury infer that it did? And it looks to me like at least what's alleged here, that at least there's enough. Maybe you can make that argument. This is what happens in locker rooms. It's just football players. It's not really sexual in nature. You can make that argument. But it sounds to me like that's an argument for a jury, not a district judge. I understand, Your Honor. I guess it's just, I guess it's our position that even if you take all of the allegations that are true, they don't state a plausible claim of severe and pervasive harassment. Since there was no actual sexual assault, and you have nipple twisting and butt slapping, the kind of, I mean, butt slapping in a football locker room, I don't see how that's very remarkable. And then it insults to somebody because they reported the alleged assault. I just think in the totality, when you look at the other severe and pervasive cases, that this doesn't reach the line because, I understand. I understand your argument. It's time that you say five minutes. I did, thank you, Your Honor. A few notes I want to say about what Mr. Boardman was arguing about the Wolfe case in the Eighth Circuit. That was actually a jury trial. So, you know, those allegations, although they may be similar, you know, in some ways, and the plaintiff may have lost that case before a jury in the Eighth Circuit. You know, we aren't even anywhere near the idea of a jury trial yet. We're just trying to get past the motion to dismiss stage. So, you know, the Wolfe is interesting. It basically is about whether or not the court charged the jury correctly after, you know, after the fact, after the plaintiff had already lost and had the opportunity to go before a jury. You know, of course we take the position that the fact that the rape didn't actually happen doesn't make it any less sexual in nature, you know, for purposes of Title IX and 1983. They made the argument to lower court, and that was always our position, of course, that holding keys, telling someone you're going to rape them while coring them in a locker room, trying to rape them, you know, we, of course, take a position that meets the standard of being severe and pervasive and offensive, which are the standard under Davis. And the language in Davis, I think, is important about, you know, what does not comply with Title IX as far as what harassment can mean. And so it's insult, banter, teasing, shoving, pushing, and gender-specific conduct. I mean, those are the general sort of exclusions out under Title IX, under Davis, that may not reach the level of severe and pervasive. But, you know, of course it's our position, as we've argued before, that this type of conduct is far beyond just teasing, hair-pulling, anything like that, the kids do in the schools. This is attempted rape, and I just don't know any other way to sugarcoat it than say that, along with other emasculating conduct before and after the attempted rape. So based on the complaint we have, we think that's very plausibly beyond just horseplay in the locker room or hazing. So, and I think what Mr. Borman said was interesting about, you know, if girls make fun of each other not meeting a sexual stereotype of beauty, you know, I think that can also violate Title IX. That's what the Higgins case is about, that they cited. That case they cited for the proposition of what happened after the rape, you know, not only being retaliatory. But in Higgins, the actual conduct was sexual in nature, and it was girls making fun of another girl because of the way she looked, and some other conduct like that. And one of the points that Mr. Brooks made about the school is the use of the P-word. Again, I hate to say that in oral argument, but, I mean, that's what was said in this case. The allegation in the complaint is dual. They called, the allegation in the complaint actually says that they used the P-word, both because he reported the attempted rape, and to make the point that he should have just acceded to the rape, if he didn't want to be called a P-word. And so I don't think you can just separate the idea that retaliation, that it was just retaliation after the attempted rape happened, because the same kind of sexual emasculating behavior continues, and that's what the allegations in the complaint are, and we think a jury could reasonably infer that, that that was all sexual conduct under Title IX, not just retaliation. And the rear-end slapping comment, I thought was, the allegations in the complaint about the rear-end slapping did not just occur in the locker room, it wasn't on a football field where they're congratulating each other for doing a good job. Instead, basically, the allegation in the complaint is they slapped him after he, they tried to rape him with keys, then they slapped his rear-end, and they also did it in the classroom in the school. So just to sort of, I guess, correct the record on that, I just want to say that we do think the butt-slapping, even though I understand that football players may do that in some circumstances, and it's not Title IX actionable, of course. In this situation, it was far more than that. It was a comment on the fact that, you know. Well, it was the context, because there was already a sexual nature in that context. Right. It's exactly what you have to do. You have to come with all the context to decide whether or not it's severe and pervasive and offensive under Davis. So, having said that, my time is almost over. No one has any more questions for me. I don't hear any. Okay. Thank you very much. Thank you. We'll move to our last case. Thank you. Thank you. Mr. Barley. Good morning, Your Honors. Good morning. May it please the Court, my name is Matt Barley, and I represent State Farm Fire and Casualty Company. This is a simple coverage question as to whether or not there is insurance coverage for a general consent judgment that was entered into between an employee and his employers for failing to provide a safe work environment. The answer is no for three reasons. First, the general consent judgment includes a potentially covered negligence claim and uncovered wantonness in Employer Liability Act claims, and the district court erred in weighing the evidence in the state court action in failing to even consider Mr. Babwari's employer liability claim. Second, the insurance agreement was not triggered because there was not an occurrence under the objective person standard. It seems to me that the injuries arose out of the victim's employment. There's a causal connection between the employment and the injuries. It was in a dark corner of the employer's parking lot, right, late at night, next to a dumpster. His employer required him to park there, right? That's correct, Your Honor. And assigned him to work the closing shift. That's correct. It would be dark, right? That's correct. And as I understand, what the Alabama courts have held is that the injuries that are sustained before or after work in a parking lot that's owned and maintained by the employer arise out of employment. That's right. That's correct, Your Honor. And so in addition to the... Isn't that the simplest way to decide this case? That is, Your Honor. That would be the primary thrust of our position. However, there are two other alternative arguments that we do make with regards to the general consent judgment and then also additionally just the fact that the insuring agreement is not triggered under the correct objective person standard. The district court applied a subjective intent standard relying on cases like Dyer and Tanner. But in those cases, they specifically, the policy language at issue, identified... This is a general liability policy, right? So the point of this is to provide coverage for the business and its liability to the general public. But excluded from that is employer liability to employees that arises out of the employment, right? That is correct, Your Honor. With regard to the general consent judgment, Your Honor, it was entered into on both a negligence claim, which is essentially covered, and then the wantonness in the Employer Liability Act claim. When faced with a general consent judgment, the Ahab, Barton, and Penn National cases all make clear that while the district court can look to the underlying evidence and allegations, it cannot apply weight to the evidence and speculate as to which claims form the basis of the general consent judgment. And unfortunately here, Your Honor, that's exactly what the district court did. And I think the key distinction is the Barton case, as affirmed by this court, Your Honor, the district court can look and could look to the underlying evidence to see if the evidence could support a claim that was under the judgment awarded. But what the district court did here was it looked to see if the evidence would award the judgment itself. So the distinction is that we make, Your Honor, is that the district court wouldn't step too far beyond just looking at the evidence and the claims in the underlying case and went a step further in analyzing that. And more specifically, Your Honor, even when addressing the evidence and the allegations with regard to the consent judgment, the district court failed to even consider Mr. Bavori's employer liability claim. But again, the primary thrust of our position is the Employer Liability Act exclusion, which as the Chief Judge noted, is clearly intended, this is a commercial general liability policy intended to protect the insurance from third-party invitees, guests, and non-employee liability. With regard to the insuring agreement, the district court erred in applying the subjective intent standard, as I started to mention a minute ago. And the district court erred by relying on cases like Tanner and Dyer, which looked at policy language that had the subjective intent of the insurer in addressing whether or not the injuries were foreseeable. Here, under the Hartford case, when addressing an accident or occurrence, the standard is a reasonable person standard. And we believe that the court erred in applying that, given the evidence of the multiple robberies at the store that Mr. Bavori was calling the police multiple times a week for fights and shootings and drug dealings in the parking lot. And based on the fact that his employer, despite being warned, failed to secure a second employee to help prevent crime and to fix the inoperable security lighting. And as this court has correctly noted already, the employer liability exclusion is to be construed broadly. And basically, you've got three arguments. All you have to do is win on one. That's correct, Your Honor. So we're trying to make it as easy as possible for the court. But with regards to the other cases, for the employer liability exclusion, as this court has noted, they are construed liberally. And that includes, you know, the arising out of it in the course of employment does not necessarily limit it to the time that the employee is on the clock. It's construed broadly enough to include a reasonable amount of time for coming and going after the employee is clocked out, which is the case here, Your Honor. If anybody has any other questions, I'll reserve the remaining time. Okay. I think we understand, Mr. Babwari. Mr. Brunner. May I please support Robert Brunner for Mr. Babwari? Your Honor, the employer's liability exclusion is not construed broadly. That is a policy exclusion and insurance policy, which is to be read strictly against the drafter here, State Farm. But even if you agreed that your client suffered a bodily injury, okay, under the policy, you still have to get past the exclusion, don't you, Your Honor? We do, Your Honor. Okay. Yes, we do. And I apologize. Actually, they have to prove the exclusion. So in a sense, that's their burden. I understand, but you have to get past it. I believe that they have shown what the exclusion is. So how do you get past the – because you concede that Alabama law applies to the policy, correct? It does, Your Honor, yes. So how do you get past the Barnett case and the Hughes case? The leaving work cases. So those are both, number one, comp cases. And as the trial court points out, if you look at the Weaver cases, the Scott Paper cases, and the nationwide cases, you approach those comp cases, applying compatibility in the comp context, differently than an insurance exclusion in Alabama. The problem with that is that, you know, your arguments about narrowly and broadly construing have some sway where there's some ambiguity. But if we're just trying to interpret this language and to make sense of it, whether this is in the course of employment, arises out of the employment, it's pretty clear that that test is drawn from workers' comp. It's the same exact test. And courts all over America interpret that kind of employer liability exclusion in an insurance policy with reference to the same exact test, the same text that appears in workers' comp. That's just common. You'll find it in case law all over the country. And when you do that, there's no ambiguity here. It's obviously transplanted from that context to here. And then you look at the Alabama case law, and the Alabama case law says, look, you've got the Brunson case, as Judge Legoa mentioned, the Hughes case, the Barnett case. If we think those are relevant here, you lose. So both of those, again, are in the comp context. The Hughes case, the Barnett case, the Louisville railroad case. And what they explicitly state is they are exceptions to the general rule, that once you're off the clock, that once you're leaving, you're not at work. It's not arising out of incarceration. That exception of the general rule, Your Honors, I would submit is particularly applicable in a comp case, where like in Weaver or Scott Paper, we're talking about the beneficial purpose of the comp bargain, that people gave up their right to tort claims to go into the comp system. They're not applicable here when you're strictly construing a policy. Then, if we are going to say those are applicable, if those are apples to oranges and we say that is arising out of, then we have to take the next step of looking at the assault claims like we've cited in the brief. And specifically, I point in this court to the Ex parte NJJ case, where you have a woman opening up a Burger King at 4 o'clock in the morning, I believe, where she is sexually assaulted. She's the only person there. That, in the comp context, was not compensable because our Supreme Court has found that unless one can prove the assault arises out of work, then it's not. And here, that burden of proof is on them. They decided to submit this case. They agreed to submit this case on a stipulated record. It's the employer's parking lot. The employer requires him to park there. They give him the closing shift, knowing the lighting problems and it's going to be poorly lit. They've had problems there. I'm having a hard time understanding how they have that. For him to be specifically shot, your honor, for him to be shot, as the district court analyzed, that's simply not... You're confusing the injury with whether it arises out of or in the course of the employment. Respectfully, I don't know how they can be separated. He's off the clock. The only connection is that he is at work. As the district court pointed out, Strickland, the Pollack case, the Girl Scout case, the counselor falling off the horse, and as we just talked about, these assault cases. Those cases show that simply being on the employer's premise, simply giving the opportunity for the assault, is not enough. One might have as one inference among another that this was because of him working there. There was no discovery done on this. Of course, the assailant was never deposed. We do not know what was in his mind. But there's no reason as picking between that this happened to him because he was a worker there, or would this have happened to somebody else, a customer, for example, parked in that same spot, in that same area of the parking lot. He would not have necessarily parked there because it was poorly lit, and it wasn't required by the employer to park there, as he was. And may not have judged, but may not have, on this issue, break our way, because it's their exclusion to prove. There's no dispute, though, that he was required to park there by the employer, is there? In the area of, I think, in the area of the dumpster, yes. I believe that is the stipulated facts. There is. And there's also no evidence of why he is personally assaulted. He's off the clock. He does have changes carved from the shop, but he actually carried it out there at 8 p.m. But that was for the convenience of his wife, because that was, she needed the change for her, I guess, her separate convenience store that she operated. Yes, Your Honor, that's correct. That was not something that the employer required. That was something he did personally. That's correct. And like I said, it was already there. It had been there for three hours. He was not directed to do that. They were not controlling how he was doing that. Other than, as Your Honor notes, they did tell him to park there. But we simply don't have that nexus for that to be something they could prove to meet their burden on, as the district court found. The, on the issue of whether it's an occurrence or not, Council and State Farms seem to want to have this case decided on simply the pleadings. And as to not only that issue, but also this work issue, that simply is not the law. We have to look at the facts. The trial court was appropriate in looking at facts. One of the problems here is the district court didn't even address whether the claim under the Employer's Liability Act could have provided a basis for liability. Just ignored it. I disagree, Your Honor. I disagree. I don't see where, where is it in the order where you explained that. Well, if, if one looks at the Employer's Liability Act claim, the only reasons it is not covered, the only reasons it would not be covered are the two exclusions that the district court found did not apply. That would be the Employer's Liability Exclusion. And that does get somewhat confusing because the exclusion is the Employer's Liability Exclusion and the Act is the Employer's Liability Act. Two totally separate things. But the reason that doesn't, that presupposes that the state court would have necessarily reasoned the same way that he did. And that's not necessarily the case. I mean, there's a claim asserted there. It could have been the basis for the consent judgment. It could have been, Your Honor, but when the court... And he doesn't even address it. I believe he does. You're saying it's implicit. You have to read between the lines that that's implicit in what's going on here. I would ask how else would it violate coverage? How else would it not be covered other than those two exclusions? And in their, in their... If I think his, if I think his reading of the Employer's Liability Exclusion is wrong, then that's a problem for him too, isn't it? If you think his reading of it is? Yes. I submit respectfully, Judge, I don't know how... As we've already been talking about this morning. How his reading could be wrong. I believe your dispute is with his application of it to the facts. Yeah, well, my... Yeah, well, his reading that it does not apply in this context in the employer's parking lot, where the employee is required to park. If I disagree with that, then it creates a problem too with your implicit reasoning about how the Employer's Liability Act could not have been a basis for liability. If you think they have met their burden on that, it is applying the same, it is the same question. Yeah. Because that's the same, that is the same reason, and really that and what was argued below, they didn't actually argue in their brief to your honors why the Employer's Liability Act would not be covered. That was not explicitly set out. They did argue it in their summary judgment brief to his honor below, and what they argued there was that it would be excluded by the Employer's Liability Act exclusion and the employment-related practices exclusion, and while you are correct, your honor, that Judge Proctor did not say, I'm ruling like this on the Employer's Liability Act, the only way he would have been able to exclude coverage on that basis was those two exclusions, which he explicitly said did not apply. And that really gets back to looking at the facts like the Dyer, Stokes, Tanner, Hartford, and Barton cases require. Looking at this, briefly touch on this occurrence issue, Barton does say, imply that wantonness claims are not covered. I think that is dicta because Barton actually looked at the facts of that case, looked at the facts that the general contractor there knew it was violating code by nailing walls without, I'm sorry, nailing something in the roof without protecting it. Of course, they knew it was going to rain. They knew that was going to cause damage. That is a distinction that does not mean all wantonness claims are not covered. Of course, insurance policies aren't written like that. They're not written to cover negligence or not, or wantonness or not. They're pertinent to your honor's inquiry just a moment ago, Employer's Liability Act claims are not. They apply the language of what's covered, the language of what's excluded, to which two different burdens of proof apply, and then that language is applied to conduct. And courts interpret it according to the conduct. And so that's why when we look at whether it's a question of whether this is an accident, an occurrence, or whether it was Employer's Liability Act, we look at those facts and whether that language applies. State farms construction would have this court determine that anything that equates to foreseeability is not covered, that anything that is reasonably foreseeable is not covered. And, of course, that would, you know, get rid of the purpose of a commercial general liability policy. The Barton case, to the extent it is, trial court's reasoning for inclusion of language that wantonness claims is not covered is wrong and has created confusion in this circuit by people alleging that that is the law, that wantonness claims are not covered. Your honor, I see my time is running out. Are there any other questions? I don't hear any. Thank you, Mr. Bruner. Without that, we'd ask that the applying appropriate standards of the trial court be affirmed. Thank you. Mr. Farley, you've saved a few minutes. Thank you, Chief Judge. I'll be brief unless the panel has any questions for me. The insurance policy at issue is never intended to insure foreseeable injury to an employee. And that's exactly what happened here, Mr. Butler. It arises out of and in the course of employment. That is correct. Mr. Babwari sued his employers for failing to provide a safe work environment. And now that he has a consent and judgment in hand, he cannot now say that he was not an employee and that the harm was not due to his injuries. If the customer had come back all the time and was a customer and was there to just buy something, we'd be talking about a different situation, right? That's correct, Your Honor. The entire reason he was there was... I don't want to be too broad in your statements. Thank you, Judge. And therefore, Your Honor, we would ask that the court reverse and render it for State Farm. Okay. I think we understand your case, Mr. Farley. And we'll be in recess until tomorrow.